**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

FLORIDA ACTION
COMMITTEE, INC.,

*Plaintiff*,

No. 4:26-cv-388-MW-MJF

v.

LARRY KEEFE, in his official
capacity as Commissioner of the
Florida Department of Law
Enforcement, et al.,

*Defendants*.
_____________________________/

# FDLE COMMISSIONER KEEFE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## Introduction

Florida Action Committee sues on behalf of sex offenders. It alleges that "Florida and its counties and municipalities have transformed the State's sex-offender registration scheme from a recordkeeping and notice tool into a system of perpetual punishment." Doc. 147 ¶ 2. Its theory combines Florida's statutes with ordinances enacted by forty-seven local governments and treats the resulting burdens as constitutional wrongs. But Commissioner Larry Keefe is the proper *Ex parte Young* defendant only for the state statutes that FDLE administers. Neither he nor FDLE drafted Fort Lauderdale's residency ordinance, approved Miami-Dade County's 2,500-foot buffer, or enacted Suwannee County's bus-stop gag ordinance. Doc. 147 ¶¶ 133, 64(a) (citing Miami-Dade County Code § 21-281), 79 (citing Suwannee County Code § 60-3(b)). The Committee seems to want to hold the Commissioner responsible for those and other local choices. Doc. 147 ¶¶ 63–66, 76–81, 150. The Eleventh Circuit's decision in *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020), forecloses that effort. And considered on their own, the state statutes readily pass constitutional muster. This Court should therefore dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6).

## Background

The challenged provisions fall into two categories: state statutes establishing Florida's sex-offender registration system and local ordinances regulating registrants. The Committee alleges that Commissioner Keefe is "responsible for enforcement of

Florida's state-level sex-offender registration laws." Doc. 147 ¶ 28. It identifies no state law that allows the Commissioner to enforce any local ordinances.

The relevant state registration statutes provide:

- Section 943.0435 requires a sexual offender to register by "[r]eport[ing] in person at the sheriff's office" in his county of residence "within 48 hours after" establishing a residence in Florida or being released from custody. Fla. Stat. § 943.0435(2)(a)1.

- Section 944.607 imposes a parallel registration requirement on a sexual offender "who is under the supervision of the Department of Corrections but is not incarcerated," requiring registration "with the Department of Corrections within 3 business days after sentencing for a registrable offense." Fla. Stat. § 944.607(4).

- Section 943.0435(7) requires that a registrant who intends to establish a residence in another state report in person "at least 48 hours before the date he or she intends to leave this state," or "at least 21 days before the date he or she intends to travel outside of the United States." Fla. Stat. § 943.0435(7).

Separate state statutes impose these baseline requirements on persons convicted of specified offenses:

- Section 775.215 provides that a person convicted of certain offenses against a victim under sixteen "may not reside within 1,000 feet of any school, child care facility, park, or playground." Fla. Stat. § 775.215(2)(a), (3)(a). The 2026 amendments added public swimming pools to that list, *id.* § 775.215(4)(a), but only for offenses occurring on or after July 1, 2026, and for persons already subject to subsection (2) or (3) who change their permanent residence on or after that date, *id.* § 775.215(4)(c).

- Section 856.022(3) prohibits covered persons—those convicted of specified offenses against a victim younger than 18—from loitering and prowling "within 500 feet of a place where children were congregating." Fla. Stat. § 856.022(1), (3).

- Section 856.022(4)(a) makes it unlawful for a covered person to "knowingly contact, communicate with, or approach with the intent to contact or communicate with a person younger than 18 years of age in any park building or on real property comprising any park, playground, or public swimming pool." Fla. Stat. § 856.022(4)(a). The statute expressly exempts a minor who is the covered person's "family or household member." *Id.*

The Committee cites other statutes but doesn't challenge them. For example, it cites section 322.141, governing markings on driver's licenses. Fla. Stat. § 322.141(3); *see* Doc. 147 ¶¶ 51–52, 122.

The Committee also describes various "[p]ractical effects of the scheme on registrants," Doc. 147 at 32; *see id.* ¶¶ 84–96, without alleging how those effects flow from the state statutes, *see, e.g.*, *id.* ¶¶ 84, 95.

**Legal Standards**

This Court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when, as here, there's no standing to sue. *Gesten v. Stewart Law Grp., LLC*, 67 F. Supp. 3d 1356, 1357 (S.D. Fla. 2014). Under Rule 12(b)(6), it may dismiss a complaint, or any count, that fails to state a claim upon which relief can be granted. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). And, at this stage, this Court should accept as true all well-pleaded factual allegations and draw reasonable inferences in the Committee's favor; however, it shouldn't accept as true any conclusory allegations, formulaic recitations of legal elements, or labels. *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1202–03 (N.D. Fla. 2020).

## Argument

### I. The Eighth Amendment and *Ex Post Facto* counts fail (Counts 1–3).

Counts 1, 2, and 3 allege violations of the Eighth Amendment's Cruel and Unusual Punishments Clause and the *Ex Post Facto* Clause. Doc. 147 ¶¶ 145–60. Counts 1 (Eighth Amendment) and 2 (conspiracy to violate the Eighth Amendment) challenge the state statutes "taken together" with the local ordinances. *Id.* ¶¶ 149–50. Count 3 (*Ex Post Facto*) challenges the state statutes "alone or together with" the ordinances. *Id.* ¶ 158. All three fail. The Committee lacks standing to challenge local ordinances against the Commissioner. Nor is he the appropriate *Ex parte Young* defendant to the extent he's listed as a defendant for the local-ordinance challenges. And the state statutes aren't punitive. So they don't run afoul of the Eighth Amendment or the *Ex Post Facto* Clause.

**A.** Standing is an "irreducible constitutional minimum" requiring (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations omitted). The Committee can't establish traceability or redressability against the Commissioner for its most severe alleged burdens: 2,500-foot residency buffers, bans on traveling through exclusion zones, and restrictions on speech at bus stops and during holidays. Doc. 147 ¶¶ 63–64, 76, 79–81. Local ordinances impose those burdens. They are caused

by "independent officials" whose actions "may not be imputed to the [Commissioner]." *Jacobson*, 974 F.3d at 1253–54. An injunction against him wouldn't remedy the burdens.

**B.** Relatedly, to the extent Counts 1 through 3 proceed under a "combined effect" theory that lumps the state statutes together with the local ordinances, the Commissioner isn't the proper *Ex parte Young* defendant. *E.g.*, Doc. 147 ¶¶ 146, 150. The *Ex parte Young* exception to Eleventh Amendment immunity permits prospective relief against a state official only when the official has the necessary connection to the enforcement of the challenged law. *Ex parte Young*, 209 U.S. 123, 157 (1908). That connection is more than a general duty to follow state law. *See, e.g.*, *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1203–04 (11th Cir. 2021); *Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003). The Committee, however, identifies no state law that gives the Commissioner or FDLE authority to enforce any local ordinance. Its conclusory allegations that FDLE "coordinates, combines, or acts in concert" with local governments, Doc. 147 ¶¶ 108, 113, don't fill that gap, and every joint operation it describes targeted violations of state registration laws, *id.* ¶¶ 109–11, 113 n.1.

**C.** On the merits, the state statutes implicated by the Eighth Amendment and *Ex Post Facto* claims are constitutional on their face because they aren't punitive. The inquiry has two steps. Courts first ask whether the legislature intended punishment. If not, they ask whether the scheme is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (citation and quotations omitted). The second step considers whether the scheme (1) "has been

regarded in our history and traditions as a punishment," (2) "imposes an affirmative disability or restraint," (3) "promotes the traditional aims of punishment," (4) "has a rational connection to a nonpunitive purpose," (5) "is excessive with respect to this purpose," (6) "comes into play only on a finding of scienter," and (7) whether "the behavior to which it applies is already a crime." *Id.* at 97, 105. No one factor is dispositive. *Id.* at 97. Because courts "ordinarily defer to the legislature's stated intent," "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (quotations omitted). The Eleventh Circuit takes that standard "at its word," setting a high bar. *United States v. W.B.H.*, 664 F.3d 848, 855 (11th Cir. 2011) (quoting *Smith*, 538 U.S. at 92).

Applying that clearest-proof standard, the Supreme Court and Eleventh Circuit have consistently found sex-offender registration schemes to be nonpunitive. *Smith*, 538 U.S. at 105–06 (Alaska); *W.B.H.*, 664 F.3d at 860 (federal); *McGuire v. Marshall*, 50 F.4th 986, 1024 (11th Cir. 2022) (Alabama). That includes Florida's sex-offender registration scheme. *Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008); *see also Doe v. Moore*, 410 F.3d 1337, 1345–46 (11th Cir. 2005).

Although some statutes have changed since those decisions, nothing on the face of Florida's challenged scheme suggests a punitive intent. Nor has the Committee pleaded facts plausibly satisfying the clearest-proof standard.

The Committee hasn't overcome through its pleaded facts the legislature's declaration that a person's sexual-offender status "is not a sentence or a punishment but is

simply the status of the offender which is the result of a conviction for having committed certain crimes," Fla. Stat. § 943.0435(12)—reflecting the same public-safety purpose the Supreme Court credited in *Smith*, 538 U.S. at 93. It hasn't alleged that FDLE's public website disseminates anything but "accurate information about a criminal record, most of which is already public." *Id.* at 98. It hasn't refuted that registration's lasting consequences "flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Id.* at 101. And the statutes leave registrants "free to move where they wish and to live and work as other citizens, with no supervision," requiring only that they report certain changes without needing "permission." *Id.*; *see also Clements v. Florida*, 59 F.4th 1204, 1215 (11th Cir. 2023) (holding that Florida's registration and reporting requirements, though "demanding," don't render a person "in custody"); *Clements v. Sec'y, Dep't of Corr.*, No. 2:24-cv-294-SPC-NPM, 2026 U.S. Dist. LEXIS 222933, at *18–21 (M.D. Fla. Sept. 30, 2026) (holding that residency restrictions, section 856.022, and local ordinances are likewise "collateral consequences" of a conviction that don't render a person "in custody").

The Committee's housing statistics don't change the result. It alleges that the statewide restriction puts 57 to 60 percent of Florida's housing off limits to registrants. Doc. 147 ¶ 60. But *McGuire* held that restrictions placing roughly 80 percent of Montgomery's housing off limits weren't punitive, because "the question is whether there are houses or jobs sufficiently open to [registrants] notwithstanding the exclusion zones." 50 F.4th at 993, 1010. By the Committee's account, about twice as much housing

remains available here as in *McGuire*. The higher figures reflect local ordinances, Doc. 147 ¶¶ 63–66, whose burdens result from "independent officials" whose actions "may not be imputed to the [Commissioner]." *Jacobson*, 974 F.3d at 1253–54.

The Committee's anecdotes about individual members fare no better. Doc. 147 ¶¶ 84–96. A scheme isn't evaluated "by reference to the effect that [it] has on a single individual." *McGuire*, 50 F.4th at 1010 (quoting *Seling v. Young*, 531 U.S. 250, 262 (2001)). The overall scheme is what's at issue.

Nor do the Committee's out-of-circuit and state-court cases help. Doc. 147 ¶¶ 116 (citing *People ex rel. T.B.*, 489 P.3d 752, 766 (Colo. 2021)), 121 (citing *Doe v. Snyder*, 834 F.3d 696, 701 (6th Cir. 2016)). The Colorado Supreme Court limited *T.B.* to Colorado's scheme "as applied to juveniles" and "express[ed] no opinion on the legislature's ability to mandate lifetime sex offender registration for adult offenders." 489 P.3d at 759, 772. And the Eleventh Circuit has considered and declined to follow the Sixth Circuit's decision in *Snyder*. *McGuire*, 50 F.4th at 1010 n.27.

Finally, the Committee all but concedes the point, insisting that Florida's scheme is punitive "[w]hatever the Eleventh Circuit previously has said." Doc. 147 ¶ 115. But Eleventh Circuit precedent binds this Court and holds that Florida's sex-offender registration scheme is nonpunitive.

## II. The State's travel-notice requirement is constitutional (Count 4).

Count 4 fails for the same reasons. Any combined-effect theory runs into the standing and immunity problems discussed above. The State's statutes concerning travel notice are constitutional on the merits as well.

The Committee alleges that two statutory requirements burden interstate travel: section 943.0435(7)'s requirement that registrants report in person before traveling out of state and section 943.0435(8)'s requirement that they report in person if they cancel those plans. Doc. 147 ¶¶ 162–65. But registrants may travel wherever they want. They simply need to inform the State and "are not required to seek permission to do so." *Smith*, 538 U.S. at 101; *Clements*, 59 F.4th at 1215. The Committee concedes that the state statute even accommodates travel plans that aren't known within the notice period. Doc. 147 ¶ 53. "[M]ere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel." *Moore*, 410 F.3d at 1348. And the Eleventh Circuit has already held that Florida's in-person reporting requirement for changes in permanent or temporary residence, though "burdensome," does "not unreasonably burden" that right given the State's "strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend." *Id.* at 1348–49; *see also United States v. Ambert*, 561 F.3d 1202, 1209–10 (11th Cir. 2009). Finally, to the extent Count 4 challenges "substantially similar" local ordinances, those ordinances don't concern the Commissioner. Doc. 147 ¶ 165. He doesn't administer them.

### III. The State's prohibition on loitering is constitutional (Count 5).

Count 5 also fails on standing and immunity grounds to the extent it relies on a combined-effect theory. For example, the Commissioner has no control over the discretion exercised by "three county sheriff's offices," Doc. 147 ¶ 74, or the "travel through" restrictions imposed by local ordinances in Union, Calhoun, Brevard, Hernando, and Seminole Counties, *id.* ¶ 76.

On the merits, section 856.022(3)'s prohibition on persons convicted of specified offenses against minors "loitering and prowling" "within 500 feet of a place where children were congregating" is constitutional. Fla. Stat. § 856.022(1), (3). It doesn't prohibit mere presence; covered persons may walk or drive through these areas but may not loiter or prowl where children congregate. *See id.* The statute thus does not "require an offender to appear at any specific time or place or to perform an affirmative act." *Clements*, 2026 U.S. Dist. LEXIS 222933, at *19. Instead, it imposes the kind of "specific, narrowly tailored law[]" that the State may enact to "prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor." *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017). Its location restrictions are merely "collateral consequences" of conviction. *Clements*, 2026 U.S. Dist. LEXIS 222933, at *18–21. Nor is there a fundamental right to enter places such as parks where children congregate. *See Doe v. City of Lafayette*, 377 F.3d 757, 769–73 (7th Cir. 2004) (en banc) (upholding a ban on a convicted offender entering all city parks and holding that there's no fundamental right "to enter the parks to loiter").

The Committee's reliance on *City of Chicago v. Morales*, 527 U.S. 41 (1999), doesn't change the result. It cites the *Morales* plurality for the proposition that a loitering law must include "a second specific element of the crime." Doc. 147 ¶ 168 (quoting *Morales*, 527 U.S. at 57–58 (plurality opinion)). Florida's statute does. It applies only to persons convicted of enumerated sexual offenses "against a victim who was younger than 18 years of age," and only when they loiter or prowl near a place where children congregate. Fla. Stat. § 856.022(1), (3). The Florida Supreme Court upheld the State's general loitering-and-prowling statute against vagueness and arbitrary-enforcement challenges for that same reason: "Proof of both elements is essential in order to establish a violation of the statute." *State v. Ecker*, 311 So. 2d 104, 110 (Fla. 1975); *see id.* at 108–09.

## IV. The void-for-vagueness challenge fails (Count 6).

Count 6 alleges that sections 856.022(3) and 856.022(4)(a) are void for vagueness because they use "loiter[ing]," "prowl[ing]," "children," and "congregating." Doc. 147 ¶ 174. A law is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "[P]erfect clarity and precise guidance have never been required." *Williams*, 553 U.S. at 304 (quotation omitted).

The Florida Supreme Court has already rejected vagueness and arbitrary-enforcement challenges to the State's general prohibition on "loiter[ing] or prowl[ing]." *Ecker*,

311 So. 2d at 109–10 (holding section 856.021 "not vague or overbroad"). "Loitering," "prowling," and "congregating" are ordinary words that the Committee itself defines using a standard dictionary. Doc. 147 ¶¶ 69, 71. The undefined term "children" creates no real uncertainty either. In context, a statute protecting places where children congregate plainly doesn't cover a gathering of adults merely because each is someone's "son or daughter." *Id.* ¶ 70. And because the statute applies only to persons convicted of offenses "against a victim who was younger than 18 years of age," Fla. Stat. § 856.022(1), "children" plainly means minors. The Committee also acknowledges that section 856.022(4)(a) uses a "more concrete standard[]," Doc. 147 ¶ 70—it reaches only "a person younger than 18 years of age," Fla. Stat. § 856.022(4)(a)—yet still challenges that provision as vague, Doc. 147 ¶ 174.

Finally, to the extent Count 6 challenges the "Vague Ordinances," *id.* ¶¶ 33, 174, those ordinances don't concern the Commissioner for the reasons discussed above.

## V. The free-speech claim fails (Count 7).

Count 7 combines section 856.022(4)(a) with the "Gag Ordinances" in a single paragraph. Doc. 147 ¶ 179. But the state statute does only one thing: it makes it unlawful for a covered person "to knowingly contact, communicate with, or approach with the intent to contact or communicate with a person younger than 18 years of age in any park building or on real property comprising any park, playground, or public swimming pool," unless the minor is the covered person's "family or household member." Fla. Stat. § 856.022(4)(a). That is precisely the kind of "specific, narrowly tailored law[]" the

Supreme Court assumed States may enact to "prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor." *Packingham*, 582 U.S. at 107. Count 7's remaining challenges—restrictions on holiday decorations and Halloween activities, Doc. 147 ¶¶ 10, 81, communications at school bus stops, *id.* ¶ 79, and speech "of a sexual nature," *id.* ¶ 80—concern local ordinances that the Commissioner doesn't administer.

**Conclusion**

For the foregoing reasons, Commissioner Keefe asks this Court to dismiss the claims against him.

Dated: October 13, 2026

Respectfully submitted,

*/s/ Mohammad O. Jazil*

Mohammad O. Jazil (FBN 72556)
Valerie L. Chartier-Hogancamp (FBN 1011269)
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
vhogancamp@holtzmanvogel.com
kgordon@holtzmanvogel.com

*Counsel for Defendant Commissioner Keefe*

## RULE 7.1(F) CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(F), this motion complies with the applicable size and font requirements. The document is double-spaced in Garamond 14-point font and contains 3,261 words, including the headings, footnotes, and quotations but excluding the case style, signature block, and certificate of service.

/s/ *Mohammad O. Jazil*
Attorney

## CERTIFICATE OF SERVICE

I certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ *Mohammad O. Jazil*
Attorney