**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**FLORIDA ACTION COMMITTEE, INC.,**

**Plaintiff,**

**v.** **Case No.: 4:26-cv-00388-MW-MJF**

**LARRY KEEFE, ET AL.,**

**Defendants.**
______________________________________/

**DEFENDANT CITY OF ORLANDO'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND ALTERNATIVE MOTION TO SEVER AND INCORPORATED MEMORANDUM OF LAW**

Defendant City of Orlando ("Orlando" or "the City") moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss every claim asserted against it in the First Amended Complaint (Doc. 147). In the alternative, the City moves to sever the claims against it pursuant to Rule 21.

## INTRODUCTION

The First Amended Complaint runs 68 pages and 179 paragraphs. It names Orlando in the caption, the preamble, and two party-definition paragraphs. (Doc. 147 ¶¶ 29, 31). It pleads no fact about Orlando: no Orlando resident, no Orlando housing figure, no Orlando map, no Orlando enforcement event.

Orlando is sued over one ordinance. § 43.94 of the City Code tracks Florida's residency statute (section 775.215, Florida Statutes), and sets the buffer at 1,500 feet instead of 1,000. It regulates residence and nothing else. It has no presence, loitering, speech, or holiday provision, and FAC does not contend otherwise. (Doc. 147 ¶¶ 31–34; Doc. 147-2 at 4).

After the first round of motions, FAC attached 553 pages of member declarations and alleged that they "detail the injuries to each member within the jurisdiction of each defendant as relevant to each claim." (Doc. 147 ¶ 22; Doc. 147-5). They do not. Thirty-seven declarations mention Orlando. None states the declarant's offense, the victim's age, or the offense date, which are the facts that decide whether § 43.94 applies to the declarant at all. None identifies a home, an address, or any place that § 43.94 puts off limits and state law does not. Six of the seventeen Orlando resident-form declarants swear to registry histories that place their offenses before October 1, 2004, the earliest offense date § 43.94 reaches.

FAC's other answer is to erase the differences among the defendants. The First Amended Complaint now alleges that FDLE and 47 counties and cities are a "single entity or single enterprise" (Doc. 147 ¶¶ 112, 151), and, alternatively, co-conspirators (id. ¶¶ 152–56). It pleads no fact connecting Orlando to either theory. The claims against Orlando should be dismissed for four reasons:

1. **No standing.** FAC has not shown that any member is subject to § 43.94 or injured by it, and Orlando cannot redress injuries that state law causes.
2. **No conspiracy.** Count 2 pleads no agreement, contradicts FAC's own single-entity theory, and would hold Orlando liable for other governments' laws.
3. **No punishment and no retroactivity.** Counts 1 and 3 fail because § 43.94 is a civil residency regulation narrower in distance and in the conduct it restricts than those the Eleventh Circuit has upheld, and because no member is alleged to have a pre-ordinance offense.
4. **Shotgun pleading.** Every count now adopts every count before it, and the First Amended Complaint disclaims any need to say which defendant did what.

## BACKGROUND

### A. The First Amended Complaint

FAC is an advocacy organization that sues on behalf of its members. (Doc. 147 ¶¶ 20–25). It challenges Florida's sex-offender registration, residency, and loitering statutes (sections 943.0435, 944.607, 775.215, and 856.022, Florida Statutes), together with ordinances of 32 counties and 15 cities. (Id. ¶¶ 28–34).

The First Amended Complaint sorts the local defendants into four groups. (Id. ¶¶ 31–34). Orlando is in one: the "Residency Restriction Defendants," each of which "has adopted an ordinance forbidding registrants from living (permanently or

temporarily) within defined exclusion zones." (Id. ¶ 31). Exhibit 2 identifies one Orlando provision, § 43.94, and lists it only as a residency restriction. (Doc. 147-2 at 4). Orlando is not alleged to have a presence restriction, a vague ordinance, or a speech restriction. (Doc. 147 ¶¶ 32–34).

Three counts are pleaded against "all defendants": Count 1 (Eighth Amendment), Count 2 (conspiracy to violate the Eighth Amendment), and Count 3 (*Ex Post Facto* Clause). (Id. ¶¶ 145–60). Orlando is named in the caption, the preamble, and two party-definition paragraphs. (Id. ¶¶ 29, 31). The factual allegations never mention Orlando:

- The local housing-availability figures are for Broward, Miami-Dade, Palm Beach, and Duval Counties. (Id. ¶¶ 62, 66).
- The maps depict Miami, Broward County, and Jacksonville. (Id. ¶¶ 134–36).
- The example ordinances are those of Miami-Dade, Broward, Palm Beach, Jacksonville, Brevard, and Hernando. (Id. ¶ 64).
- None of the enforcement operations is alleged to have involved Orlando. (Id. ¶¶ 109–11, 113 n.1).

A new section titled "Interagency coordination to enforce the scheme" alleges that each local defendant "enforces not only the local ordinances applicable within its jurisdiction, but also all applicable state criminal laws" (id. ¶ 102); that each "from time to time, coordinates, combines, or acts in concert with" FDLE (id. ¶ 108); and

that "it may be inferred" that FDLE and each local defendant "routinely undertake unified operations" and "thus constitute a single entity or single enterprise" (id. ¶ 112). Count 1 accordingly asks the Court to hold the state statutes and the Residency and Presence Restriction Ordinances invalid "taken together" and "on their collective face." (Id. ¶¶ 149–51).

**B. Orlando Code § 43.94**

The City Council adopted § 43.94 on May 20, 2013. (Sec. 43.94 (Ex. A)).[1] It provides that a person convicted of one of five enumerated offenses "in which the victim of the offense was less than 16 years of age, may not reside within 1,500 feet of any school, child care facility, park, or playground." § 43.94(2). It is modeled on section 775.215, Florida Statutes:

| | Fla. Stat. § 775.215(2)–(3) | Orlando Code § 43.94 |
|---|---|---|
| Conduct regulated | Residence | Same |
| Distance | 1,000 feet | 1,500 feet |
| Facilities | School, child care facility, park, playground | Same |
| Predicate offenses | §§ 794.011, 800.04, 827.071, 847.0135(5), 847.0145, and similar out-of-state offenses | Same |
| Victim | Under 16 | Same |
| Earliest offense date | Oct. 1, 2004 (Florida convictions); May 26, 2010 (out-of-state convictions) | Same |
| Facility established after the residence | No violation; no forced relocation | Same |

[1] The Court may consider the ordinance. FAC's Exhibit 2 identifies it (Doc. 147-2 at 4), it is central to the claims against Orlando, and its authenticity cannot be disputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); Fed. R. Evid. 201(b)(2).

| | Fla. Stat. § 775.215(2)–(3) | Orlando Code § 43.94 |
|---|---|---|
| Removed from the registration requirement under § 943.04354 | Exempt | Same |

§ 43.94 therefore applies only to a person who (1) was convicted of one of the five listed offenses, (2) against a victim under 16, (3) for conduct on or after October 1, 2004 (May 26, 2010, for out-of-state convictions), and (4) has not been removed from the registration requirement under section 943.04354, Florida Statutes. For that person, state law already forbids residing within 1,000 feet of the same four kinds of facilities. § 775.215(2)(a), (3)(a), (4)(a), Fla. Stat. What § 43.94 adds is principally the band between 1,000 and 1,500 feet.[2]

**C. Exhibit 5**

Exhibit 5 is 553 pages of member declarations. (Doc. 147-5). Apart from a group of narrative declarations at the front (id. at 2–51), it consists of two pre-prepared forms, each dated between September 18 and 28, 2026. The declarant's name does not appear on the filed copies.

[2] § 43.94's definitions of "park" and "playground" omit two limits in § 775.215(1)(b)–(c). Its "park" does not require that children "regularly congregate" there, and its "playground" need not be an "independent area" designated "solely for children." Compare § 43.94(1), with § 775.215(1)(b)–(c), Fla. Stat. The First Amended Complaint does not mention the difference, and no declarant identifies a facility that meets one definition and not the other. In 2026 the Legislature added public swimming pools to section 775.215 for offenses committed, and for covered persons who move, on or after July 1, 2026. § 775.215(4), Fla. Stat.; Doc. 147 ¶ 57. § 43.94 has no pool provision.

- **The "resident" form** states the city and county where the declarant "reside[s]," then lists up to eight numbered harms. (E.g., Doc. 147-5 at 76–77).
- **The "jurisdiction" form** lists one or more defendant jurisdictions and up to three harms: inability to obtain housing "in the above jurisdiction(s)," inability to stay overnight with friends or family, and worry about entering an "exclusion zone." (E.g., id. at 89–90).

Both forms attribute every harm collectively to "Florida Statutes §§ 322.141, 775.215, 856.022, 943.0435, and 944.607" and to "municipal ordinances" that neither form identifies. Neither form states the declarant's offense, the victim's age, the offense date, an address, or the distance from any place to any school, child care facility, park, or playground.

Thirty-seven declarations mention Orlando:

- **Seventeen resident forms** state that the declarant "reside[s] in Orlando in Orange County." Six report 23 to 32 years on the Florida registry. (Doc. 147-5 at 80, 142, 263, 266, 287, 288). Eleven include the item "I have been unable to obtain a house or apartment in my preferred location." None says where that location is.
- **One narrative declaration** is from a declarant who served a federal sentence, returned to Orlando in July 2013, and has lived in the same condominium

since then "without incident." (Id. at 14). His stated housing concern arises from the 2026 amendments to section 775.215, Florida Statutes, which added public swimming pools; his condominium community has a pool. (Id. at 15).

- **Nineteen jurisdiction forms** list "the City of Orlando," alone or with as many as 49 other jurisdictions. Four include the housing item. (Id. at 107, 292, 467, 478). Three include only the exclusion-zone item. (Id. at 191, 237, 460).

## LEGAL STANDARD

A motion under Rule 12(b)(1) may attack jurisdiction facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). This motion is a facial challenge. It accepts the First Amended Complaint's well-pleaded facts and the contents of its exhibits. Exhibits are part of the pleading "for all purposes," Fed. R. Civ. P. 10(c), and "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citations omitted).

The plaintiff bears the burden and, at the pleading stage, "must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). The elements are an injury in fact that is fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An association suing for its members must show that "its members would otherwise have standing to sue in their

own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). That requires "specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). And because "standing is not dispensed in gross," a plaintiff "must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (cleaned up).

A complaint must plead facts that make the claim plausible, not merely possible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are not accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. FAC LACKS STANDING TO SUE ORLANDO.

The body of the First Amended Complaint pleads standing only through FAC's members. (Doc. 147 ¶¶ 21–25).[3] It must therefore show that at least one

[3] FAC's president, whose declaration the First Amended Complaint incorporates (Doc. 147 ¶ 26), says that FAC also sues "on behalf of itself" and that it has diverted resources to educating members, monitoring legislation and local ordinances, answering member inquiries, and litigating. (Doc. 147-1 ¶¶ 8–11, 21, 31, 34). The declaration never mentions Orlando or § 43.94. The specific concerns it identifies arise under state law: internet-identifier reporting (id. ¶¶ 18–19), the 2026 pool amendment (id. ¶ 25), the three-day "temporary residence" definition (id. ¶ 26), and the loitering statute (id. ¶ 30). Those expenditures are not tied to Orlando, and an organization "cannot spend its way into standing." *FDA v. All. for Hippocratic Med.*,

member has an injury that is traceable to Orlando and that a judgment against Orlando would redress. Exhibit 5 is FAC's only attempt to do so, and it fails at each step.

**A. No FAC member is shown to be subject to § 43.94.**

§ 43.94 does not apply to "registrants." It applies to persons convicted of five specific offenses (or similar out-of-state offenses), against victims under 16, for conduct on or after October 1, 2004 (May 26, 2010, for out-of-state convictions). Florida's registry is far broader. FAC itself alleges, quoting a commentator, that registries "sweep in a much broader range of offenses, including ones that took place decades ago" and ones "that did not involve any contact with children." (Doc. 147 ¶ 36). FAC's membership is broader still: it includes registrants' family members, attorneys, researchers, and treatment providers. (Doc. 147-1 ¶ 4). Its declarants include a registrant's parent and a registrant's spouse. (Doc. 147-5 at 2–6). FAC's president says only that "[a] majority" of its members are "directly subject to" the challenged laws. (Doc. 147-1 ¶ 5). A statistical claim does not identify a member. Summers, 555 U.S. at 498–99.

Each Orlando form declarant says only that the declarant is "registered as a sexual offender" (or, in three cases, a "sexual predator") "in the State of Florida."

602 U.S. 367, 394 (2024); *see City of S. Miami v. Governor*, 65 F.4th 631, 638–40 (11th Cir. 2023).

(E.g., Doc. 147-5 at 80, 93, 263, 266). None states the statute of conviction, the victim's age, or the date of the offense. Without those facts, nothing shows that § 43.94 applies to any of them. *See Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203–04 (11th Cir. 2018) (no associational standing where political party "failed to allege that a specific member will be injured by the rule").

Where the declarations do supply a relevant fact, it cuts against FAC. Six of the seventeen Orlando resident-form declarants swear that they have been on the Florida registry for 23, 24, 29, 29, 30, and 32 years. (Doc. 147-5 at 80, 142, 263, 266, 287, 288). A person registered in 2003 or earlier necessarily committed the registrable offense before October 1, 2004, and nothing in those declarations suggests a later one. § 43.94 does not reach them. § 43.94(2). Four of the six nonetheless include the item swearing that "the residency restrictions applicable to me" kept them from their "preferred location." (Doc. 147-5 at 80, 263, 266, 288). The forms do not distinguish one law, ordinance, or defendant from another.

FAC has been told this before. In *Doe v. Miami-Dade County*, the Eleventh Circuit affirmed the dismissal of FAC's *ex post facto* challenge to a county residency ordinance because FAC "failed to allege that any of its members were convicted of, or even committed, a relevant sexual offense before November 15, 2005." 846 F.3d 1180, 1184–85 & n.4 (11th Cir. 2017). The same omission defeats Count 3 here. That claim requires a member whose covered offense occurred on or after October

1, 2004 (May 26, 2010, for out-of-state convictions), and before May 20, 2013. No declarant who mentions Orlando gives an offense date.

**B. No member identifies an injury that § 43.94 causes.**

A covered member must still show an injury "fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). State law independently bars every covered person from residing within 1,000 feet of the same kinds of facilities. § 43.94 therefore injures a member only if it keeps him out of a place that state law leaves open. No declarant identifies such a place.

**Housing.** Eleven declarants who say they live in Orlando include this item: "I have been unable to obtain a house or apartment in my preferred location because of the restrictions on where I can live." (E.g., Doc. 147-5 at 80). The form does not say where the preferred location is: in Orlando, in another city, or in another state. It does not say which "restrictions" foreclose it. It does not even say the declarant lives inside the City limits. It says "Orlando in Orange County," while FAC's other form says "the City of Orlando" when it means the City.

Four jurisdiction forms include a parallel item: unable to obtain housing "in the above jurisdiction(s)." (Doc. 147-5 at 107, 292, 467, 478). Each lists Orlando together with other jurisdictions. One lists fifty, including three that are no longer defendants. (Id. at 292). None says the housing was in Orlando, or where.

**Overnight stays.** Most Orlando declarants include an item saying they cannot "stay overnight with friends or family members at their homes as often as I would like." (E.g., id. at 80). None says where the friend or relative lives. And the "temporary residence" rule that the jurisdiction forms invoke ("three or more days in the aggregate") comes from state law, not from § 43.94, as FAC's president acknowledges. § 775.21(2)(n)1., Fla. Stat.; (Doc. 147 ¶ 58; Doc. 147-1 ¶ 26; e.g., Doc. 147-5 at 107).

**Everything else.** The remaining items have no connection to Orlando:

- *Exclusion zones.* Declarants fear entering a zone "where I am not allowed to loiter or otherwise be present or speak freely." Orlando has no presence or speech restriction. (Doc. 147 ¶¶ 32, 34). Three of the nineteen jurisdiction forms claim nothing else. (Doc. 147-5 at 191, 237, 460).
- *Holiday decorations.* Four Orlando declarants swear they are "barred from decorating my home for holidays." (Id. at 120, 266, 288, 290). The First Amended Complaint identifies five holiday ordinances; none is Orlando's. (Doc. 147 ¶ 81).
- *Travel reporting, license markings, and address verification.* These are requirements of state statutes. §§ 943.0435(6)–(7), 322.141(3), Fla. Stat.

**The narrative declarant.** The one Orlando declarant who gives details has lived in the same condominium for thirteen years. (Doc. 147-5 at 14–15). His

housing concern is whether "[t]he recently enacted changes to Florida law," including the new public-swimming-pool restriction, will let him move to a first-floor unit. (Id. at 15). That is a complaint about section 775.215(4), Florida Statutes. § 43.94 has no pool provision.

**"Would choose to live there."** The First Amended Complaint alleges in the alternative that a member "would choose to live" in each defendant jurisdiction. (Doc. 147 ¶ 25). "Such 'some day' intentions—without any description of concrete plans"—do not establish an actual or imminent injury. *Summers*, 555 U.S. at 496 (*quoting Lujan*, 504 U.S. at 564). The jurisdiction forms add nothing concrete.

The forms attribute every harm to five state statutes and to local ordinances collectively. That is standing "in gross." *Murthy*, 603 U.S. at 61. An association may use pseudonyms, but it must still plead specific facts showing that a particular member is injured by the particular defendant. *See Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772–73 (11th Cir. 2024); *Summers*, 555 U.S. at 498. FAC represented that Exhibit 5 does this "within the jurisdiction of each defendant as relevant to each claim." (Doc. 147 ¶ 22). As to Orlando it does not, and the exhibit controls. *Griffin Indus.*, 496 F.3d at 1206.

**C. Orlando cannot redress injuries that state law causes.**

FAC's response is that there is "no practical reason or legal basis for differentiating among the sources" of a restriction, and that each local defendant

"enforces . . . all applicable state criminal laws." (Doc. 147 ¶¶ 101–02). That does not supply standing against Orlando, for three reasons.

**First, the allegation is conclusory.** Its only support is a citation to section 30.15(5), Florida Statutes, which addresses the duties and jurisdiction of county sheriffs. Sheriffs are independently elected constitutional officers. (Art. VIII, § 1(d), Fla. Const.). The First Amended Complaint pleads no fact showing that the Orlando Police Department has ever enforced section 775.215 against anyone, much less as a matter of City policy. The only reference to the Orlando Police Department in 553 pages of declarations is that it and the Sheriff "conducted periodic, unannounced compliance checks" at one declarant's home, and he adds that he has "never been advised by any member of law enforcement" that he is out of compliance. (Doc. 147-5 at 14).

**Second, a judgment against Orlando would not lift the statute.** Section 775.215 is a state criminal law. It is prosecuted by the State Attorney. § 27.02(1), Fla. Stat. Redressability requires that "the effect of the court's judgment on the defendant—not an absent third party—" redress the injury. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc) (cleaned up). An injunction against one official does not redress an injury when independent officials who are not parties remain free to enforce the same law. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253–55 (11th Cir. 2020); *see also Support Working Animals, Inc. v.*

*Governor of Fla.*, 8 F.4th 1198, 1201–05 (11th Cir. 2021) (no standing to sue Attorney General who lacked authority to enforce challenged statute). Relief here would depend on "the unfettered choices made by independent actors not before the courts." *Lujan*, 504 U.S. at 562 (cleaned up).

**Third, a city answers under § 1983 only for its own policy.** *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). That rule applies to claims for prospective relief. *Los Angeles County v. Humphries*, 562 U.S. 29, 39 (2010). The First Amended Complaint identifies Orlando's policy: "[e]ach ordinance challenged in this case reflects a 'policy or custom' of the County or Municipal Defendant that adopted it." (Doc. 147 ¶ 99). A statute enacted by the Florida Legislature is not Orlando's policy. And FAC does not allege that the City made a deliberate choice to enforce section 775.215. A plaintiff may not file a conclusory *Monell* claim in the hope that discovery will uncover a viable theory of municipal liability.

## II. COUNT 2 FAILS TO STATE A CONSPIRACY CLAIM.

A § 1983 conspiracy claim requires facts showing that the defendants "reached an understanding" to deny the plaintiff's rights, and "an actionable wrong to support the conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) (cleaned up). "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) (citations omitted). Count 2 fails for four independent reasons.

**A. No agreement is pleaded.**

The agreement allegations are labels. "On information and belief," each local defendant "coordinates, combines, or acts in concert with FDLE from time to time in pursuit of a common design, plan, and objective." (Doc. 147 ¶ 113). "[I]t may be inferred" that the defendants "routinely undertake unified operations." (Id. ¶ 112). Each defendant "willingly" does so "with a shared purpose to deprive FAC's members of their constitutional rights." (Id. ¶ 153). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.

The facts actually pleaded do not involve Orlando and do not suggest an agreement by anyone:

- **None concerns Orlando.** The First Amended Complaint describes two joint operations, in Flagler and Jackson Counties, both after this suit was filed, and cites seven press releases about others. (Doc. 147 ¶¶ 109–11, 113 n.1). It does not identify any Orlando official or agency as taking part in any of them.
- **None concerns residency restrictions.** The operations checked compliance with registration reporting duties: "failure to report vehicles, phone numbers, email addresses, and internet identifiers." (Id. ¶ 110; see id. ¶ 111). Count 2 alleges a conspiracy to inflict "banishment" through residency and presence restrictions. (Id. ¶¶ 146, 153).
- **Cooperation required by statute is not a conspiracy.** State law directs local

agencies to verify registrants' addresses "in conjunction with" FDLE. (Id. ¶ 105 (quoting § 943.0435(6), Fla. Stat.)). Conduct that is consistent with lawful, independent compliance with a statutory duty does not suggest an unlawful agreement. *See, e.g., Twombly*, 550 U.S. at 556–57.

- **Knowledge is not agreement.** That each defendant has "knowledge and awareness" of the others' ordinances (Doc. 147 ¶ 114) describes public records, not a meeting of the minds.

**B. FAC's single-entity theory forecloses a conspiracy.**

FAC alleges that FDLE and every local defendant "constitute a single entity or single enterprise." (Doc. 147 ¶¶ 112, 151). The allegation is doubtful, but if it were true, it would defeat Count 2, because a single entity cannot conspire with itself. *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). The intracorporate conspiracy doctrine applies to public entities and to § 1983 claims. *Grider*, 618 F.3d at 1261–62; *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000).

FAC cannot have it both ways. If the defendants are one entity, there is no conspiracy. If they are separate, as the First Amended Complaint itself pleads (Doc. 147 ¶¶ 29–30), each answers only for its own policy. Alternative pleading is permitted, but each alternative must state a claim. Here, neither does.

**C. Count 2 is an end-run around *Monell*.**

FAC seeks no damages. The allegation that the defendants are "jointly and severally liable as co-conspirators" (Doc. 147 ¶ 156) therefore serves one purpose: to make Orlando answer for four state statutes and 46 other local governments' ordinances. A municipality "cannot be held liable under § 1983 on a *respondeat superior* theory," *Monell*, 436 U.S. at 691, and still less for the acts of other sovereigns. Conclusory allegations do not "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79.

**D. There is no underlying violation.**

A conspiracy claim falls with the underlying claim. *Grider*, 618 F.3d at 1260. Count 1 fails for the reasons in Part III.

**III. COUNTS 1 AND 3 FAIL TO STATE A CLAIM AGAINST ORLANDO.**

Both counts depend on the premise that § 43.94 is punishment. The *Ex Post Facto* Clause reaches only laws that impose punishment. *McGuire v. Marshall*, 50 F.4th 986, 1001 (11th Cir. 2022). The Eighth Amendment regulates only "punishments." *Ingraham v. Wright*, 430 U.S. 651, 664–67 (1977). Whether a law is punishment turns on a two-step test: whether the legislature intended to punish and, if not, whether the scheme is "so punitive either in purpose or effect as to negate" that intent. *Smith v. Doe*, 538 U.S. 84, 92 (2003) (cleaned up). "[O]nly the clearest proof" suffices at the second step. *Id.* (cleaned up).

**A. The ordinance at issue is § 43.94.**

FAC asks the Court to assess every challenged statute and ordinance "taken together" and on their "collective face." (Doc. 147 ¶¶ 149–51). The punishment inquiry does not work that way as to a city. It asks what the enacting legislature intended and what its own enactment does. *Smith*, 538 U.S. at 92. Orlando enacted one ordinance. It did not enact any Florida Statute, or any other defendant's ordinance, and it cannot be charged with their effects. *Monell*, 436 U.S. at 694.

That disposes of most of the First Amended Complaint. The presence restrictions, the speech restrictions, the travel-reporting rules, the license markings, and the maps of Miami, Broward County, and Jacksonville say nothing about § 43.94.

**B. FAC pleads no punitive intent by Orlando.**

The First Amended Complaint alleges nothing about the Orlando City Council's purpose in 2013. Its intent allegations concern remarks by state legislators and a public witness about a 2026 state bill, and one state representative's remark reported in 2005. (Doc. 147 ¶¶ 13, 120, 124–25).

The text of § 43.94 shows a regulatory purpose. It applies only to offenses against children under 16. It restricts residence only near schools, child care facilities, parks, and playgrounds. It protects a resident from displacement when a covered facility later opens nearby. It exempts persons removed from the registration

requirement under section 943.04354, Florida Statutes. Where a restriction "is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Smith*, 538 U.S. at 93–94 (cleaned up); *accord McGuire*, 50 F.4th at 1002.

**C. *McGuire* forecloses the claim that § 43.94 is punitive in effect.**

*McGuire* upheld Alabama's residency and employment restrictions against an *ex post facto* challenge. § 43.94 is narrower in the following respects:

| | Alabama law upheld in *McGuire* | Orlando Code § 43.94 |
|---|---|---|
| Distance | 2,000 feet | 1,500 feet |
| Conduct barred in the zone | Residing, working, and volunteering | Residing |
| Covered persons | Adult sex offenders | Persons convicted of certain offenses against victims under 16 |
| Plaintiff's claimed effects | About 80% of Montgomery's housing and 85% of its jobs off limits; plaintiff homeless and unable to find a job | No fact pleaded about Orlando |

*See McGuire*, 50 F.4th at 1008–15. Each of the five factors *Smith* found most relevant follows from that comparison. *Smith*, 538 U.S. at 97 (*citing Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)):

- **Traditional Punishment (Banishment).** Alabama's restrictions did not resemble banishment because registrants "remain able to enter exclusion

zones for other purposes." *McGuire*, 50 F.4th at 1009. The same is true in Orlando, which restricts residence alone. FAC now pleads that the practical effect of the challenged laws is "akin to banishment," rather than that it "is banishment" (*compare* Doc. 1 ¶ 3, *with* Doc. 147 ¶ 3), and distinguishes *McGuire* on the ground that Alabama registrants "retained a meaningful ability to live and move within communities" (Doc. 147 ¶ 147). To the extent that distinction rests on movement, it is a presence theory, and Orlando has no presence restriction.

- **Affirmative restraint.** Limits on where a registrant may live and work were "not sufficiently punitive to override the legislature's expressed intent." *McGuire*, 50 F.4th at 1011–12. A limit on residence alone, at a reduced distance, is less.
- **Traditional aims of punishment.** Some deterrent effect does not make a regulation punitive. *Id.* at 1012–13.
- **Rational connection.** Reducing the risk of reoffense against children is a legitimate nonpunitive purpose, and the court found it unnecessary to resolve a dispute about the relative rate of recidivism. *Id.* at 1013–14.
- **Excessiveness.** The plaintiff did not show by the clearest proof that Alabama's restrictions were excessive, although he argued that they applied for life, were

more severe than other States' laws, and left him homeless and unable to find a job. *Id.* at 1015.

The First Amended Complaint pleads no fact about the effect of § 43.94. It gives no City of Orlando (or Orange County) housing figure, no map, and no person displaced. All it pleads is that Orlando's ordinance exists. (Doc. 147 ¶ 31).

**D. *Doe v. Miami-Dade County* does not help FAC.**

In *Doe*, two individual plaintiffs stated a plausible *ex post facto* claim because they alleged that Miami-Dade County's 2,500-foot ordinance itself had made them homeless and was excessive. One could not live with his sister and was twice told by probation officers to live at homeless encampments. The other slept in his car at an encampment after repeatedly failing to find affordable compliant housing. 846 F.3d at 1185–86. The decision turned on those plaintiff-specific facts about that ordinance.

FAC pleads nothing comparable about Orlando. It identifies no person whom § 43.94 has kept from any home. On remand in *Doe*, moreover, the district court rejected the facial challenge after a five-day bench trial. *Doe #4 v. Miami-Dade County*, No. 14-23933-CIV, 2018 WL 10780510 (S.D. Fla. Dec. 18, 2018); *see Doe #6 v. Miami-Dade County*, 974 F.3d 1333, 1335–37 (11th Cir. 2020) (describing that ruling and affirming denial of leave to add an as-applied claim).

**E. Each count fails for an additional reason.**

**Count 1.** Because § 43.94 is not punishment, it cannot be cruel and unusual punishment. And the only punishment Count 1 invokes is banishment and its analogues (Doc. 147 ¶ 146), which *McGuire* rejected for a broader law. 50 F.4th at 1008–10.

**Count 3.** An *ex post facto* claim requires a law that is "retrospective, that is, it must apply to events occurring before its enactment." *Weaver v. Graham*, 450 U.S. 24, 29 (1981). FAC identifies no member whose covered offense predates 2013. That is the defect the court recognized in *Doe*. 846 F.3d at 1184–85 & n.4.

**IV. THE FIRST AMENDED COMPLAINT IS A SHOTGUN PLEADING.**

The Eleventh Circuit recognizes four kinds of shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The First Amended Complaint is two of them.

**Each count adopts every count before it.** The first kind is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* at 1321. Every count of the First Amended Complaint "realleges and incorporates all prior paragraphs." (Doc. 147 ¶¶ 145, 152, 157, 161, 166, 171, 176). The original complaint did not do this. It incorporated only the factual allegations. (Doc. 1 ¶¶ 125, 131). The amendment introduced the defect.

**The First Amended Complaint does not say which defendant did what.**

The fourth kind asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1323. The First Amended Complaint does more than omit the specifics. It declares that "any differentiation among the defendants" is "legally impossible, improper, or unjust." (Doc. 147 ¶ 151; see id. ¶ 101). It then incorporates 553 pages of declarations "as though fully set forth herein" (id. ¶ 22), and leaves each of 48 defendants to search them for whatever might concern it.

A pleading of this kind fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

**V. THE COURT SHOULD SEVER THE CITY OF ORLANDO FROM THIS ACTION.**

The City's primary request is dismissal. In the event the Court does not dismiss the City of Orlando from this action, the Court should sever the City pursuant to Rule 21, Federal Rules of Civil Procedure. For purposes of economy, the City adopts and incorporates Miami-Dade's legal argument on this issue by reference. (Doc. 161 at 54–61). If the Court severs the claims against the City, the City will promptly move under 28 U.S.C. § 1404(a) to transfer them to the Middle District of Florida, Orlando Division, where the City is located and where § 43.94 was enacted and applies.

## CONCLUSION

The Court should dismiss the claims against the City of Orlando. Alternatively, the Court should sever the claims against the City of Orlando.

Dated this 13th day of October, 2026.

Respectfully submitted,

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
Email: mcarson@spellman.law

**SPELLMAN LAW, P.A.**
905 East Park Avenue
Tallahassee, FL 32301
T: (850) 601-1983
*Attorneys for Defendant*
*City of Orlando*

**CERTIFICATE OF LOCAL RULE 7.1(B) CONFERRAL**

Counsel for the City has conferred with Plaintiff's counsel pursuant to Local Rule 7.1(B) regarding the motion to sever, and can represent that Plaintiff opposes the requested relief.

**CERTIFICATE OF WORD COUNT**

This document complies with word limits set forth in Local Rule 7.1(F) and according to the word count feature of the word processing software used to draft it, contains 5,760 words (7,751 words including the portion of Miami-Dade's motion incorporated by reference), which includes the headings, footnotes, and quotations, but does not include the case style, signature block, or certificates.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of October, 2026, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, using the CM/ECF system, which will serve a copy to all counsel of record.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**